Attorney Leronica Lightfoot and Attorney Eileen M. Haggerty, if you could please unmute. Thank you. Attorney Mari Grady, if you could go ahead and introduce yourself so the court can hear your microphone. Good morning, Your Honors. May it please the court, Jill Mari Grady, counsel for defendant appellant and Cross Appellee in Newton Public Schools. Thank you. Attorney Lightfoot. Good morning. Good morning, Your Honors. Leronica Lightfoot for the Bureau of Special Education Appeals. Thank you. And Attorney Haggerty. Good morning, Your Haggerty, together with my colleague Alicia Warren, for the plaintiffs' FLEs, Cross Appellants, John Doe, Jane Doe, and David Doe. Thank you. Would Attorney Lightfoot and Attorney Haggerty please mute their audio and video at this time? And, Judge, if you're ready, I'll go on the record. Please do. The next case today is John Doe et al. v. the Newton Public Schools et al. Appeal number 21-1560. Appeal number 21-1535 and Appeal number 21-1539. Attorney Mari Grady, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. May it please the court, Jill Mari Grady. I'm accompanied next to me with co-counsel, Attorney Carolyn Weissman, on behalf of the appellant, Cross Appellee, Newton Public Schools. We are here today because the District Court's decision overturning the decision of the Bureau of Special Education Appeals Hearing Officer and awarding judgment in favor of the plaintiffs contains three significant errors of law and fundamentally alters the standard of review of IDEA disputes, contrary to and inconsistent with decades of established law in this circuit. First, the District Court failed to adhere to the long-established law in this circuit, which was recently reaffirmed by this court in three recent cases, prescribing the standard of judicial review of the hearing officer's decision when it failed to confer the requisite due weight to the hearing officer's expertise and determinations of credibility and evidentiary weight. Similarly, the hearing officer failed to confer any deference to or even recognize the educational expertise of the Newton witnesses who formulated the IEPs and I think you misspoke, counsel. You said the hearing officer failed? The District Court failed. Thank you, Your Honor. Second, the District Court deviated from the established snapshot in time standard, which prescribes that an IEP is to be evaluated by what was or what was not reasonable at the time it was formulated when it held that the April 2018 IEP developed by Newton in response to new I don't want to prevent you from saying what you want to say, but you know your brief lays out the arguments pretty well, but there's a lot of factual record intensive material which the case turns on in my view, so if you could just get into the basis in the record for your conclusions that you're asserting, both on the snapshot in time but on the first one, I think it would be helpful. Certainly, Your Honor. Thank you. The hearing officer made significant determinations in terms of credibility of witnesses that testified at the hearing and review of documents when she rendered her decision. The District Court improperly set aside these credibility and weight determinations which are best left to the fact finder who hears this testimony firsthand and improperly elevated the weight of the district court. We had the two doctors who say that the child needs to be in a therapeutic school and the District Court said that that just wasn't explained as to why that wasn't being given weight. What's wrong with that assessment by the District Court? Your Honor, the hearing officer acknowledged in detail the letter that was issued and provided to the team by the McLean's clinicians. They never these clinicians did not testify at hearing, therefore the basis of any of these recommendations or clarification or explanation that would support the recommendation of a therapeutic school was completely missing from the record. But the hearing officer never said that that was the reason that she rejected the recommendation. Yes, Your Honor, but the hearing officer did at length go through the thorough testimony and the reason she credited the testimony of Dr. Meagher and the other new witnesses. That was the District Court's concern which is that that might be true if that was the only evidence in the record but when you have this record evidence of these two doctors who are saying the opposite they need a therapeutic school how can you accept the administrative ruling when the I believe the hearing officer did acknowledge it and it's implicitly gave I didn't say knowledge I said engage with it explain why it doesn't tip the balance usually we would say the administrators gotta address it it's such salient evidence if you want to discount it tell us why you're discounting it then maybe we'd have something to defer to you but in the absence of the adjudicator doing that why isn't the District Court right to say look just looking at it and thus you tell me why you're not giving it weight I don't see why you wouldn't give it weight. Well in this instance the District Court substituted its own determination of credibility and weight without the support in the record and completely discounted the countering weight and evident in credibility that was given by the hearing officer perhaps at that time it should have been remanded to the hearing officer but there was certainly not enough in the record to overturn and certainly substitute notions when these who regularly hears and sees these cases with the expertise at hand as well as the significant testimony and other evidence that was submitted that supported that a therapeutic school was not required to provide a fake. Thank you your honors. In addition to that the District Court. Five minutes remaining. Thank you. Inappropriately compared a subsequently rendered IEP that was amended based on significant amount of information that the team received after the first IEP was issued to make a per se concession that the prior IEP was inappropriate. This is directly. Counsel I agree with your basic legal proposition that that the IEP has to be determined based on the information that's available to the IEP team at the time. The question that I have in my mind is whether we can fairly say that judge that judge Cyrus used the material in the second or the results of the second IEP in formulating her decision. I think it may be a fair reading of her decision to say that she made her decision and then went on to say look at the second IEP that'll show you that my decision is really sound. The word she used in introducing the second IEP was that it buttresses what I've already decided and I wonder why we shouldn't give her I understand that that how you can interpret her decision the way you have interpreted it but I don't understand why if it's subject to two reasonable interpretations we shouldn't give the district judge the benefit of the doubt. Thank you your honor. I would suggest the language is problematic should this court agree with the district courts initial finding that the evidence in the record supported that the IEP did not provide a faith which I have we have significantly briefed that we feel that was an error. The language even suggesting that a subsequent IEP can be used as further evidence even if in this case it was just supplementary is very problematic. It sends the signal to schools and parents and others alike that these types of information can be used to make the argument that the underlying previous IEP could fail to provide a faith which is a significant error of law and also not the case in here when there was significant events and information provided in the months between the two rendering of the IEPs. Before you your time ends could you just address the 2018 and 19 IEP? Yes your honor. The hearing officer again imputed knowledge outside of circumventing the snapshot in time standard by imputing knowledge that was not before undisputedly not before the team at the time that the first IEP was rendered. As an initial matter the hearing officer. You mean the hearing officer? The district court. The district court first found that that the student did not need a residential placement to receive a faith which is de facto the district court ruled that the IEPs providing for a therapeutic day school provided a faith. The analysis should have ended there under Burlington in Florence County. Instead the judge embarked on a secondary analysis imputing these equitable principles that should not have ever been reached to justify awarding reimbursement to parents. First in imputing this knowledge and by doing so invoking an ad hoc common-sense notion that has no basis in law or that what otherwise would constitute a faith might not constitute a faith if the child is going to have to move schools to that school. That there's nothing unusual about that conclusion it is sort of common-sensical. Maybe there weren't sufficient findings to support that here but I don't see what inherently is problematic about the suggestion that sure all things being equal that IEP would provide a faith but that IEP is going to be applied to a child who's coming from another school is gonna have to transition in and in that setting it wouldn't provide a faith. That's I think there is case law that sometimes makes that conclusion. Yes thank you your honor and there is case law that was outside the circuit that does stand for that and I would agree that potential those types of considerations are appropriate when in an overall analysis of whether an IEP provides a faith. I will remind you it's not before the hearing officer. This was not before the IEP team at the time. Also this is commonplace for students that are transferring schools which is why the hearing officer is best poised to make these determinations. There was nothing in the record here that really that set the notion that this student was atypical in terms of potential transition and that's one of the concerns with the finding in this case is that this is almost always a situation that presents itself when students are moving schools and similarly the equitable... How does that how does that I'm just trying to figure out how it works when you say at the time of the IEP the IEP team didn't know he was in another school? The language that the district court uses that that was provided after the fact that this testimony at the hearing although those witnesses that testified to that submitted information or even participate in the team meetings did not raise that to the team at the time. Additionally the district court explicitly says that this was the student shouldn't be penalized by the district's failure to provide a FAPE in the first place. That stands for the premise that doesn't apply to just this case but can be construed to apply to all cases where district fails to provide a FAPE in one instance and forevermore the student remains at a school of the parents choice. Well I guess what I'm asking this is the last version of it. One possibility is that we need to remand the district court's decision on this point for findings about or assessment of whether the fact of the transition undermines the basis for concluding that the 2018 and 19 IEPs constituted a FAPE. But another possibility if I'm understanding is that we have no basis for remand we should just reverse because and I'm not quite following what that argument is. Because the district court found that the IEPs provided a FAPE under the correct analysis of what was before the team. The judge then took presumably a secondary analysis invoking these and equitable principles which are not to be So is the idea that if you're going to rely on a transition basis for saying that the IEP that otherwise would provide a FAPE doesn't provide a FAPE that argument has to be made to the IEP team first and that didn't happen here? I would argue that that information should have certainly been before the team and there's also nothing in the record that says the team did not consider that. It wasn't an issue that was brought until these witnesses testified at the hearing. These are the types of things that school personnel consider on a regular basis and that the hearing officer and their expertise and experience is aware of. Anything further? No. Thank you. Thank you Attorney Mari Grady. At this time please mute your audio and video and Attorney Lightfoot please unmute your audio and video and you have a five-minute argument. Introduce yourself on the record to begin. Good morning your honors, Leronica Lightfoot for the BSEA. The BSEA has appealed this case for three reasons. The language in the district court's decision departs from the obligation under the IDEA to consider that junior year IEP as a snapshot. It improperly conflates the subsequent senior year IEP as bearing on that previous junior year IEP. The second reason is that the district court didn't follow the in Florence County. It did not make the initial predicate finding that there was not a fate that was offered. Instead it instituted an ad hoc common-sense standard. To answer the questions from Judge Celia and Chief Judge Barron, the the BSEA is here because this will cause confusion in the special education arena if this decision is left standing. To go back and respond to Justice Celia's question to my co-counsel, when one looks at the language that addresses that the district court uses, that that senior year IEP buttresses the conclusion for the junior year IEP, the snapshot provision that Justice Celia wrote about and established in Rowland is totally eroded by the information that the court puts in its decision after that buttress language. The court goes on in its decision to do a comparison between that private school setting for the senior year and that junior year public school IEP. That in itself is at odds with the past GD versus Swanscott where we had Chief Judge Barron and Chief Judge Howard speak to how the progress that was in a post-dated IEP could not be used to substantiate or show the inefficiency with regard to the previous IEP. And that's the problem that we have with the buttress language here. There begs for confusion in this small circle of special education. It runs afoul of the precedent from this court in Rowland M. all the way up to Swanscott and all of the cases in between. I wanted to just get to this Florence County point on the 2018 and 19 IEPs and I'm just having a little trouble figuring out how to think through the transition, a concern that an IEP that otherwise would provide a fate doesn't provide a fate due to the reality of the transition that's going to have to occur. I assume you agree with counsel for the Newton Public Schools that in some instances a ground for concluding that an IEP that otherwise would provide a fate doesn't is that the IEP is going to be applied to a child who's coming from another school that correct yes okay so how does that how are we supposed to then in the in your view how is that supposed to be analyzed so one way to read the district court's opinion here is yes the I'm not saying that the IEP doesn't provide a fate in the abstract but what she's saying is that although it might it can't given the reality of the transition which is just evident on the record and if that's all that's being said that seems to me to me a perfectly consonant with the case law that's out there that says sometimes the fact of transition can undermine an IEP that otherwise would provide a fate so what's wrong with that it's wrong legally what's wrong with that is that it's contrary to case law from this is that because of Florence County that you're saying it's contrary not solely because of Florence County but primarily yeah because you're saying that there was no finding that the the IEP didn't provide a fate it's what I'm saying is that I think that may be just misunderstanding what the district court is saying the district court as I read it could be read to be saying the IEP does not provide a fate because of the transition and that's why that IEP is being rejected it's not saying I'm never making a finding that the IEP doesn't provide a fate it's saying it's not providing a fate because of the transition that would seem to me exactly possible analysis so long as there's transition does suffice to undermine the fate and maybe there's a question about whether the district court made those findings and maybe there's a question about whether that argument about transition has to be made to the IEP team itself but those seem like distinct points what the district court your honor what the district court states in its decision is that a residential placement is not required she says that's a separate point from that may be true but her point is I read it is that the fate that the Newton Public Schools claimed their IEP would provide in 2018 and 19 would not be provided to this child given that this child was moving to a new school I understand your honor's position but my response to that is once again I cannot concede that Florence County and the finding of a faith is not required here before the district court can get to that equitable determination or reimbursement the equitable the equitable termination is not an equitable termination about cost it's a determination about the reality of whether that IEP will work for a child who's coming from another school and that seems to be just part of the analysis of the faith which is disagree that that's consistent based on this case once again when you look at that decision from the court and the confusion the confusion that exists there and why the BSEA is before this court is because one can look and think that the the rationale that plays out here is that a school system can decide that it is in the best interest to place a child in one year in a private setting and not be able to transition that child from that setting when we look at Doe versus Portland that came out from this court recently in March of this year there was a IEP for January 2020 that IP solely was determined not to be not to warrant reimbursement if your honor has nothing further from me that decision cannot stand based upon the president precedent from this court thank you thank you thank you attorney Lightfoot please go ahead and meet your audio on video at this time attorney Haggerty if you could unmute and introduce yourself on the record to begin thank you good morning your honors may it please the court again I'm Eileen Haggerty representing John Doe Jane Doe and David Doe the plaintiffs appellees and cross appellants your honors this case is about a child a child named David Doe he was 16 years old at the time when the events that led to this case started during that year his sophomore year at Newton North High School 2017 David's special needs grew so great that at a time in his life when he should have had everything before him instead he was thinking about ending his life council we just because time is limited and I think the pails does understand this the seriousness of the facts of the case I think it'd be helpful if you could just address the legal questions on appeal that we need to resolve concerning the 2017 1819 IEP certainly your honor with regard to the first if you prefer that I take them in otherwise if you have a preference I can go in a different order but my preference if you started with the 2018 and 19 that would be helpful to me certainly certainly your honor your honor the 2018 and 2019 IEPs denied David a fape and the the district court did so find I I'm not quite sure how the appendix joint record appendix 209 she says I determined on this basis meaning the detriment from a move that the 2018 and 2019 IEPs did not excuse me judge I'm so sorry to interrupt judge I I am I think that attorney Lightfoot actually left the meeting so your honor says I was as I was saying the district court clearly did make a finding she says so in so many words that those two IEPs the 2018 and 2019 IEPs deprived David of faith and she she she finds a totally legitimate reason which is the detriment that the harm that a move away from Franklin Academy would have caused him and that's a perfectly legitimate argument if any do we attach to the fact that that ground for finding the faith inadequate apparently wasn't raised or at least not decided before the hearing officer well your honor the hearing officer may not have decided it there are a lot of things that her decision doesn't address but what was it yes your honor it was there was testimony from three of the plaintiffs witnesses the parents witnesses dr. Jason McCormick the neuropsychologist who evaluated David in late 2017 early 2018 he testified that a move would have been harmful to David he said I fear that the gains David has made at Franklin would be unraveled then dr. Barbara Hughes who was one of David's therapists while he was at Franklin she testified also that when I understand the testimony was there but with the argument was made to the hearing officer that that this proposal didn't constitute a fate because of the emotional harm that would result from dislocation yes your honor I believe it I believe it was okay I believe it wasn't was that was that argument made to the IEP team that was formulating the fate and is that a problem if it wasn't your honor I'm not I don't recall offhand if it was made to the IEP team I I don't think that it was but I would have to I would have to look at the record but I'm not sure that it would have to be raised because your honor part of the snapshot rule you're looking at what's objectively reasonable for the team at the time they developed the IEP and as of 2018 and again in 2019 the team had Newton had plenty of knowledge about David's rigidity about his difficulty with transitions about the fact that even transitioning to Franklin had been a long and arduous process for him so they they had the information that they would have needed well I guess one concern though is if they're not and I you'd tell me how the case law works here but you know the IEP is supposed to be tailored to the individual circumstances of the child and it's a little hard to tailor it to address the particular individual circumstance of the child's transition if a ground for objection to the IEP isn't that it doesn't account for the transition so it seems some sense to the notion that if your reason for rejecting the IEP is that it won't account for the transition that needs to be raised the IEP team itself to see if they can address it now it may be that the Newton public schools didn't make that point to the be it you know themselves to the BSA officer or have doesn't adequately raised it to judge Saris but but I do have a little bit of concern about the notion that a transition based reason for rejecting an IEP team itself well your honor I I know that the parents did raise to the team David's continuing need for the residential placement at Franklin there was disagreement over whether he needed a day or a residential program and so on so I think that much was raised I know that yeah but that but see that's the but the but the district court didn't rule on the ground that the what Newton was offering to the IEP wouldn't all things being equal qualify as a as a therapeutic school so that's a bit of a mismatch which is if the reason for rejecting it is yeah maybe that would be good enough for a student not transitioning who had the particular difficulties of transitioning but since that if that's the ground I just have a bit of concern if that wasn't told to the IEP team itself because that would mean the school would have no opportunity to respond to that particular concern and formulate an IEP that might account for it may be unable to and then that could be appealed and rejected but without it even being raised it seems a bit of a problem but I don't know if if the school district preserved that argument throughout the proceedings that that's the flaw with what with the transition based ground I in terms of this so this is not a new principle of law at all this idea that you can take the detriment to a student from a transition into account in assessing the appropriateness of an IEP we've cited on page 56 of our principal brief a number of cases from various jurisdictions including district courts within this circuit that that hold that the harm to from a transition is perfectly appropriate factor to consider the Fifth Circuit and in 2017 Dallas Independent School District versus Woody the Third Circuit in 2016 in Norristown and again in 2003 I believe in SH the Leggett case out of DC 2015 the past case District of New Hampshire it's as the Supreme Court said in Andrew F the IEP is the individualized it has to be an individualized determination the needs of a particular child are front and center and if the transition would cause a detriment to that child then that is a reason that's a proper reason for finding an IEP inappropriate whether or not it would have otherwise been appropriate and so Judge Saris correctly reasonably so far found and you know your honors the the appellants would have you believe that this is somehow it would open the floodgates to never being able to change a student's placement I submit that that's an exaggeration a catastrophic catastrophic catastrophizing the district courts decision that that wouldn't have the Newton wouldn't even have been in this position but for its failure to provide an appropriate IEP to David in the first instance which the court the court acknowledged the district court acknowledged and and took that into consideration to that it's unfair to propose an inadequate IEP allow the parents to make a unilateral placement then propose some other option and if you want to talk about opening floodgates this could incentivize districts to wait for parents to make placements and then knowing that parents would be reluctant to move students then propose something else thinking they could insulate themselves from liability and your honor that shouldn't be allowed to happen it happened either with regard to the argument about the use of the subsequent IEP as commentary on the first IEP the the 2017 IEP your honors I completely agree that this is just a was mentioned she used the term buttressed it provided it provides additional support for her decision but her decision can easily stand alone too in the event that anyone views the use of the subsequent IEP is problematic but your honor sits not only in the certainly the use of subsequent IEP would be problematic if it was the basis for her decision but we agree with that well your honors your honor not exactly as you know in Roland M the court said you look at the snapshot of what's in existence at the time to determine what's objectively reasonable for the school district and the parents at the time and the DC circuit in in in ZB said we can use the first IEP insofar as it sheds light on the reasonableness of the district's actions when it developed the second IEP in that case too there was about a seven eight month interval between the two IEPs so no but that's looking backwards that's part of the snapshot to to to look to look at something that isn't in existence at the time the IEP is formulated is is to me quite problematic if that's the basis for the decision well again your honor it couldn't be used as a per se rule but in in a case like a per se rule I'm talking about used used at all how how can you in determining whether an IEP is reasonable all right it seems to me that to be based on what was before the IEP team when it made the decision that's the snapshot and in this case your honor I believe Judge Saris was saying that the same information was before the team at the two points that in August 2000 2017 and in April of 2018 so the snapshot was virtually the same the thank you so she took that into account to say I think if it was reasonable if it was reasonable to propose a therapeutic day placement in April 2018 if there was no new information about David which there was not there was no material new information and I can get into that if you'd like but where where the two were different there was no explanation as to why it would not have been appropriate to propose a more specialized program for him back in 2017 when all the district proposed at that point was continuation of a full inclusion placement at Newton North High School which had been disastrous for him for it for David during his sophomore year they were tinkering with it adding a little bit of an add-on from their so-called links program but it remained a version of the same IEP that was inappropriate before it totally the district totally disregarded the letter from the two McLean clinicians who had treated David their information was the most recent the most relevant he had just endured a 26-day inpatient psychiatric hospitalization they had very specific recommendations that neither Newton nor the hearing officer gave any credit to and so the district court properly properly did acknowledge those your honor before you close you have a challenge to the district courts ruling yourself so do you want to just address that certainly your honor so the well-reasoned and there's no clear error as to the the questions about the IEPs and so on where the appellants have a problem with it is when it came to the relief so as you know after finding that Newton had failed in three separate IEPs failed to provide David with a free appropriate public education and finding that Franklin Academy was appropriate something that the appellants don't even challenge on this appeal and so the parents had satisfied the Florence County standard by demonstrating by proving those two points IEPs were inappropriate their proposed placement was proper under the Act Florence County does give the court some discretion to to reduce an idea also in section 14 12 a 10 some discretion to reduce reimbursement if the cost is found to be unreasonable but here your honor it's it's sort of your honors it's it's sort of puzzling the the court articulates a couple of reasons that seem to be why she's denying reimbursement for the room and board piece but neither one holds up first early in the opinion she says the district court says that the cost of a but that seems to have been an assumption on the court's part there was no evidence in the record as to what the cost of a day program would have been first of all there wasn't even a day program an out-of-district day program on offer until well the date update program won't charge room and board that's correct your honor but some of the day is that the cost of room and board should be deducted what's wrong with that well your honor some of the day programs are pretty expensive and you have to take into account also that if the district places the student at a day program isn't it but I thought the equitable point was simply that whatever the cost is no day program will charge room and board so you can't get reimbursed for room and board I'm not sure she said it quite that way that might have been how she was how the judge was thinking well but that that's what the practical effect of her ruling gives and I agree with Chief Judge Barron I can't see what's wrong with that well your honor she's the judge seemed to say that the cost of a day placement which would have had to include transportation to which can often be costly and again no evidence in the record as to what that would have been she's saying that the residential program at Franklin cost more than day program plus transportation but the way she handled that was not to come up with some arbitrary number she just says whatever you paid for room and board is simply not something you'd have to pay the day school so you can't get reimbursed for that cost well your honor she says that the cost of a private residential school as opposed to an out of it or I'm saying the order the ultimate order is yes you can't get reimbursed for the room and board cost whatever they are and your honor I think that's wrong also if from the point of view of the equities because one has to take into account the fact that there was when the parents were under pressure in August of 2017 they had to make a quick decision within the space of about a month between when David was discharged from the claims and when the school year was starting they had to find a place that could meet his needs the district they kept it just last but we I assume we reviewed what we review that equitable judgment what for an abuse of discretion use the discretion abuse of discretion your honor although I think there also may be a clear a clear arrow or an arrow of law rather in the application of Florence County okay thank you thank you your honor the the does rest on their briefs also that concludes argument in this case attorney Murray Grady attorney Lightfoot